UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jodi and Peter Ray,                                              Civil No. 06-277 (DWF/RLE)

               Plaintiffs,

v.                                                                          **MEMORANDUM
                                                                        OPINION AND ORDER**

State Farm Mutual Automobile
Insurance Company,

               Defendant.

---

James W. Balmer, Esq., Falsani Balmer Peterson Quinn & Beyer, counsel for Plaintiffs.

C. Todd Koebele, Esq., Anthony T. Smith, Esq., and Michelle D. Christensen, Esq., Murnane Brandt, PA, counsel for Defendant.

---

## INTRODUCTION

Plaintiffs Jodi and Peter Ray brought suit against Defendant State Farm Mutual Automobile Insurance Company ("State Farm") for breach of contract and agent negligence for the lack of underinsured motorist ("UIM") coverage in their insurance policies. State Farm provided Plaintiffs with insurance on their two automobiles. State Farm Fire and Casualty Company provided Plaintiffs with a Personal Liability Umbrella Policy.[1] The matter is currently before the Court on State Farm's Motion for Summary

---

[1] Defendant maintains that State Farm Fire and Casualty Company is a different corporation than the named defendant in this lawsuit, State Farm Mutual Automobile Insurance Company. Plaintiffs do not contest this.

Judgment. For the reasons stated below, State Farm's motion is granted in part and denied in part.[2]

## BACKGROUND

Plaintiffs Peter and Jodi Ray were married in 1982. The Plaintiffs have two children. Through the years, Plaintiffs relocated to several different states because of Mr. Ray's employment in the railroad industry. Mrs. Ray has been the sole person responsible for selecting and purchasing Plaintiffs' insurance coverage.

Plaintiffs moved to Illinois in approximately 1987 or 1988 and became State Farm customers in 1989. Their State Farm representative, Betty Puls-Jager, gave Mrs. Ray an insurance card and told her she would be fine if she would take that coverage with her through the years and through the states, unless she would need to add something later. At that time, the insurance card indicated that the Plaintiffs had UIM coverage.[3]

---

[2]  Plaintiffs filed a Cross Motion for Summary Judgment on September 26, 2006 (Doc. No. 13). Because Plaintiffs voluntarily withdrew their Cross Motion for Summary Judgment in their Memorandum of Law Opposing Defendant's Rule 56 Motion (Doc. No. 23), the Court need not address it.

[3]  Mrs. Ray maintains that she kept the insurance card she obtained from Puls-Jager and that each time she met with a new State Farm representative, she gave the representative the insurance card and asked for the coverage shown on it. State Farm disputes whether an insurance card was shown to the new agents, and if one was shown, disputes which insurance card was shown to the Michigan State Farm representative. Plaintiffs assert that the Illinois card was shown; State Farm asserts that if anything was shown, it was the Minnesota card, which is what Mrs. Ray indicated in her deposition.

State Farm argues that Mrs. Ray's statement in her affidavit that the Illinois card was shown to the Michigan representative should be stricken because her affidavit is inconsistent with the prior statements she made in her answers to interrogatories and her deposition. While affidavits contradicting earlier deposition testimony are insufficient to

(Footnote Continued on Next Page)

After living in Illinois for eight years, Plaintiffs moved to Tennessee, then to South Carolina, and then, in August 1998, to Duluth, Minnesota.  In Minnesota, state law requires that automobile insurance policies issued for motor vehicles include UIM coverage.  While in Minnesota, Plaintiffs purchased automobile insurance from State Farm (the Pagel Agency) that included UIM coverage.[4]

Also while in Minnesota, in October 1999, Plaintiffs purchased their first Personal Liability Umbrella Policy ("Umbrella I") from State Farm Fire and Casualty Company to obtain liability insurance coverage on some vacant, unimproved land Mrs. Ray received from her parents.

Mrs. Ray completed the Umbrella I application with a Pagel Agency employee, Michael Busick.  The application form called for the applicant to automatically obtain

---

(Footnote Continued From Previous Page)
create a material factual issue to survive summary judgment, *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983), the Court denies State Farm's request to strike Mrs. Ray's affidavit here, as this difference between the affidavit and the prior statements is irrelevant because both the Minnesota and Illinois cards would have indicated that the Plaintiffs had UIM coverage.

The Court denies State Farm's request to strike the affidavit on the other grounds raised in State Farm's brief as well.  The discrepancies State Farm asserts are either irrelevant to this Court's determination on summary judgment or are in fact not contradictory statements between the affidavit and the deposition.  This is not a case where the Plaintiffs are attempting to avoid prior deposition testimony through filing a post-deposition affidavit.  And, notably, even if the Court would grant State Farm's request to strike the affidavit, the results as to State Farm's summary judgment motion would be the same.

[4]     Plaintiffs did not know agent Bill Pagel or the Pagel Agency prior to moving to Duluth, and Plaintiffs contend that at no time did they have a special relationship with either of them.

3

underinsured motorist coverage in an amount equal to the liability limits being purchased unless the applicant affirmatively "opted-out" of the coverage by signing a space provided indicating that the applicant did not want the coverage. Mrs. Ray signed her name in this space thereby rejecting excess UIM coverage.

Mrs. Ray contends that she was not told of the availability of the additional underinsured motorist coverage on the personal umbrella policy. Instead, she asserts that she was simply instructed to sign where Busick had indicated with an "X." Busick, on the other hand, while admitting that he cannot recall the conversation he had with Mrs. Ray when she signed the umbrella policy application, testified that his standard practice was to discuss the availability, cost, and scope of all coverage available under an umbrella policy. This included explaining the availability of the excess UIM coverage twice. Mrs. Ray does not recall, but does not deny, signing the signature block rejecting UIM coverage under Umbrella I. Thereafter, a Personal Liability Umbrella Policy issued, which remained in effect until July 2005.

In September 2003, Mr. Ray was temporarily transferred to Michigan for his job, and in August 2004, Mrs. Ray and the children moved to Michigan to be with Mr. Ray. Plaintiffs kept their Duluth home and rented a residence in Michigan during this time. Michigan state law does not require automobile insurance policies to include UIM coverage. Instead, it requires policies to include no-fault benefits, which provide for the payment of all medical costs and up to three years of wage loss benefits due to automobile accident injuries.

In August 2004, Mrs. Ray visited a State Farm agent, Melissa Cavill, at the Kara Applekamp Agency in Michigan, to renew Plaintiffs' automobile insurance coverage.[5] Mrs. Ray completed two applications for insurance coverage for Plaintiffs' vehicles. The applications listed the coverage available for purchase; they did not list UIM coverage as an available coverage because State Farm does not sell UIM coverage in Michigan. Mrs. Ray signed both applications, selecting certain coverage. Mrs. Ray contends that Cavill neither discussed UIM coverage, nor told her that she would not have UIM coverage. Cavill testified that she does not recall any conversations with Mrs. Ray about insurance and that she does not make it her practice to tell customers what they can get from a different agency. Cavill also testified that if Mrs. Ray had requested UIM coverage, Cavill would have disclosed that they did not offer it. State Farm processed Mrs. Ray's applications and issued Automobile Insurance Policy Nos. 165 8198-E16-22A and 165 8199-E16-22A.

Also while in Michigan, in July 2005, Mrs. Ray completed an application for a Personal Liability Umbrella Policy ("Umbrella II") from the Applekamp Agency. Mrs. Ray contends that there was no mention of the lack of UIM coverage on any of her policies at this time. State Farm Fire and Casualty Company processed this application and issued the Umbrella II policy, which did not provide excess UIM coverage.

---

[5] Plaintiffs did not know agent Cavill or the Kara Applekamp Agency prior to moving to Michigan, and Plaintiffs contend that they had a purely business relationship with them.

Mrs. Ray admits that she never read any of the applications, insurance policies, or declarations pages. She maintains, however, that if she had been told that State Farm was not giving her UIM coverage through her Michigan policies, she would have sought coverage from someplace that did. Mrs. Ray also maintains that she informed State Farm's representatives that she and her family were returning to their permanent residence in Minnesota. State Farm does not deny this but asserts that Mrs. Ray never told the representatives when the Ray family would be moving. Plaintiffs never wrote the Applekamp Agency to inform it that they had left Michigan.

In August/September 2005, Mrs. Ray and the children moved back to Duluth. Soon thereafter, an automobile struck Mrs. Ray while she was on a walk. Mrs. Ray sustained multiple fractures and other serious injuries. At the time of the accident, the two Michigan automobile insurance policies (Nos. 165 8198-E16-22A and 165 8199-E16-22A) and the Umbrella II policy were in force. Plaintiffs submitted a claim to State Farm requesting UIM coverage. In November 2005, State Farm informed Plaintiffs that it was unable to provide UIM coverage to them under their automobile insurance policies because their policies did not contain UIM coverage. In December 2005, Plaintiffs accepted $50,000 (the liability policy limit) from the at-fault driver.

On January 17, 2006, Plaintiffs brought the present action against State Farm seeking UIM coverage.

## DISCUSSION

**I.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II.    Breach of Contract**

A plaintiff in a breach of contract case must prove that: (1) a contract was formed; (2) the plaintiff performed any conditions precedent; and (3) the defendant breached the

7

contract.  *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006).[6]  Here, it is undisputed that a contract was formed between State Farm and Plaintiffs by way of the insurance policies.  State Farm asserts, however, that Plaintiffs' suit should be dismissed because State Farm did not breach the terms of the policies that were in force at the time of Mrs. Ray's accident.

Plaintiffs' first assert under a contract theory that State Farm should have offered or provided UIM coverage to Plaintiffs in their umbrella policies.  This argument is a red herring.  First, agents in Minnesota and Michigan are not required to offer or include excess UIM coverage in umbrella policies.  Second, regardless of whether Mrs. Ray rejected the excess UIM coverage when she bought the Umbrella I policy by signing her name in the designated place, the undisputed evidence shows that Plaintiffs never intended their umbrella policies to include UIM coverage—their purpose was to insure property that Mrs. Ray received from her parents.  And, nothing in the record indicates that Plaintiffs' intentions changed upon purchasing the Umbrella II policy.  And third, Plaintiffs do not dispute the fact that State Farm Fire and Casualty Company, the company that processed the umbrella policies, is a different corporation than the named defendant in this lawsuit, State Farm Mutual Automobile Insurance Company.  Therefore, Plaintiffs have not created a genuine issue as to any specific responsibility of Defendant State Farm Mutual Automobile Insurance Company under the umbrella policies.  And furthermore, because there is no dispute that the Umbrella II policy did not

---

[6]     The Court applies Minnesota law to Plaintiffs' breach of contract claim because both Minnesota and Michigan substantive law on the issue are the same.

provide UIM coverage on the date of the accident, the Court finds that State Farm, in any capacity, did not breach a contract when it did not offer or provide UIM coverage in the umbrella policies.  Therefore, the Court grants partial summary judgment dismissing Plaintiffs' breach of contract claim as it relates to the umbrella policies.

Plaintiffs also assert that State Farm had an obligation to provide them with UIM coverage in their Michigan automobile policies because Mrs. Ray specifically requested it through giving the agent her prior insurance card that listed UIM coverage as one of the coverages that Plaintiffs had.  When State Farm did not provide such coverage, Plaintiffs contend that it failed a contractual obligation.

While the facts Plaintiffs raise may tend to show agent negligence, which is discussed further below, Plaintiffs have not cited any authority nor provided any evidence showing that State Farm breached a contractual duty.  There is no factual dispute that the two Michigan automobile policies that were in force at the time of the accident did not provide UIM coverage to Plaintiffs.  Therefore, no reasonable person could find that State Farm breached any contract by not providing UIM coverage when Plaintiffs made their claim.  The Court grants partial summary judgment dismissing Plaintiffs' breach of contract claim as it relates to the automobile policies.

**III.   Reformation**

A court may reform a contract if the moving party proves by "clear and consistent, unequivocal and convincing" evidence that "(1) there was a valid agreement between the parties expressing their real intentions, (2) the written instrument failed to express the real intentions of the parties, and (3) this failure was due to a mutual mistake of the parties, or

a unilateral mistake accompanied by fraud or inequitable conduct by the other party." *Manderfeld v. Krovitz*, 539 N.W.2d 802, 805 (Minn. Ct. App. 1995) (quoting *Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980)), *review denied* (Minn. Jan. 25, 1996). The district court has discretion as to whether to reform a contract. *See In re Estate of Savich*, 671 N.W.2d 746, 751 (Minn. Ct. App. 2003).

Citing *Holman v. All Nation Ins. Co.*, 288 N.W.2d 244 (Minn. 1980) and *Pinney v. State Farm Fire and Cas. Co.*, 435 N.W.2d 105 (Minn. Ct. App. 1989), Plaintiffs assert that because State Farm did not offer UIM coverage to Plaintiffs when it was required to do so, such coverage should be read into the contract by operation of law. By citing *Holman* and *Pinney*—cases based on Minn. Stat. § 65B.49, subd. 6—it appears that Plaintiffs base their reformation argument on a statutory duty, rather than mistake or fraud.[7]

State Farm contends that *Holman* and *Pinney* are distinguishable because they both involved situations where there was a statutory duty to offer certain coverage and the insurer failed to make such an offer. The Court agrees with State Farm.

In *Holman* and *Pinney*, Minn. Stat. § 65B.49, subd. 6, was in effect, which required insurers to offer customers supplemental UIM coverage under their automobile policies. Section 65B.49, subd. 6, was repealed in 1980 and superseded by Minn. Stat. § 65B.49, subd. 3(a), which now requires insurers to automatically include UIM coverage

---

[7] At oral argument, Plaintiffs indicated that they were not arguing a statutory duty based on Minn. Stat. § 65B.49, subd. 6. However, Plaintiffs did not provide any other authority to base its reformation argument on.

in every automobile insurance policy "renewed, delivered or issued for delivery, or executed" in the State of Minnesota.

Here, Plaintiffs' Michigan automobile policies did not include UIM coverage. And Plaintiffs did not renew, deliver or issue for delivery, or execute their automobile policies in Minnesota before Mrs. Ray's accident. Under Minnesota law, UIM coverage was not required to be included in the policy at that time, and the Court will not read such coverage into the policies. *See Cantu v. Atlanta Cas. Cos.*, 535 N.W.2d 291, 292 (Minn. 1995), *reh'g denied*, (Sept. 11, 1995); *Warthan v. Am. Family Mut. Ins. Co.*, 592 N.W.2d 136, 139 (Minn. Ct. App. 1999).[8] Therefore, the Court grants partial summary judgment dismissing Plaintiffs' claim that the Court should read into or reform the State Farm policies to include UIM coverage.

## IV. Agent Negligence

Negligence requires a showing of a duty, breach, causation, and damages. *State Farm Fire and Cas. v. Aquila Inc.*, 718 N.W.2d 879, 887 (Minn. 2006); *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000). Here, the parties dispute a showing of duty and breach. Plaintiffs assert that the State Farm agents breached a duty by failing to offer them UIM coverage and by failing to inform them that their

---

[8] In addition, because UIM coverage is not required to be included in an umbrella policy in either Minnesota or Michigan, and the agents did not make a mistake in not providing such coverage in the umbrella policies, Plaintiffs reformation argument as to the Umbrella II policy also fails.

automobile policies and/or umbrella policies did not include UIM coverage.[9] In response, State Farm contends that its Michigan agents did not have a duty to offer Plaintiffs UIM coverage, nor did they have a duty to inform or advise Plaintiffs that they lacked UIM coverage.

In Minnesota, an insurance agent has a duty "to exercise the standard of skill and care that a reasonably prudent person engaged in the insurance business [would] use under similar circumstances. *Klimstra v. State Farm Auto Ins. Co.*, 891 F. Supp. 1329, 1337 (D. Minn. 1995) (quoting *Johnson v. Farmers & Merchs. State Bank*, 320 N.W.2d 892, 898 (Minn. 1982)). And an insurance agent's duty is ordinarily limited to the duty to "act in good faith and follow instructions." *Id*. (quoting *Gabrielson v. Warnemunde*, 443 N.W.2d 540, 543 (Minn. 1989)).

"If 'special circumstances' are present in the agency relationship, the insurance agent may possibly be under a duty to take some sort of affirmative action, rather than just follow the instructions of the client." *Gabrielson*, 443 N.W.2d at 543-44. Courts have found that "special circumstances" have existed when: (1) the insured delegates decision-making authority to the agent, and the agent acts as an insurance consultant, *Beauty Craft Supply & Equip. Co. v. State Farm Fire and Cas. Ins. Co.*, 479 N.W.2d 99, 101-02 (Minn. Ct. App. 1992); (2) the agent knew that the insured was unsophisticated in

---

[9] As stated above, any argument by Plaintiffs that State Farm had a statutory duty to offer Plaintiffs UIM coverage fails because Minn. Stat. § 65B.49, subd. 6, has been repealed, and § 65B.49, subd. 3(a), was not implicated here as of the time of the accident because the policies that were in force were issued in Michigan and such policies had not been "renewed, delivered or issued for delivery, or executed" in Minnesota.

12

insurance matters; (3) the agent knew that the insured was relying upon the agent to provide appropriate coverage; and (4) the agent knew that the insured needed certain coverage.  *Osendorf v. Am. Family Ins. Co.*, 318 N.W.2d 237, 238 (Minn. 1982); *see also Johnson v. Urie*, 405 N.W.2d 887, 889-90 (Minn. 1987).

In Michigan, an insurance agent does have a duty to procure the insurance coverage requested by its insured.  *See Haji v. Prevention Ins. Agency, Inc.*, 492 N.W.2d 460, 461 (Mich. Ct. App. 1992).  But insurance agents generally have no duty to advise a potential insured about the adequacy of their insurance coverage.  *Harts v. Farmers Ins. Exch.*, 597 N.W.2d 47, 50 (Mich. 1999).  As a general rule, "an agent's job is to merely present the product of his principal and take such orders as can be secured from those who want to purchase the coverage offered."  *Id*.

However, the existence of a "special relationship" between an agent and his insured will give rise to a duty to advise.  *Id*. at 51.  A special relationship exists when "(1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured."  *Id*. at 52. [10]

---

[10]  In both Minnesota and Michigan, whether the Plaintiffs viewed their relationship with their State Farm agents as "special" is irrelevant to whether there was a "special relationship" or "special circumstances" that created a heightened duty under law.

First, Plaintiffs assert that the Pagel Agency (in Minnesota), and specifically agent Michael Busick, breached a duty by not offering Plaintiffs UIM coverage when Mrs. Ray purchased Umbrella I. Busick had a duty to "act in good faith and follow instructions." *Gabrielson*, 443 N.W.2d at 543. It is undisputed that Plaintiffs never asked, instructed, or requested excess UM/UIM coverage under Umbrella I, and there is no indication that Mrs. Ray wanted or would have wanted the excess UM/UIM coverage on that policy. Instead, the evidence reflects that Mrs. Ray purchased Umbrella I to provide liability coverage for property her parents had left her. Therefore, there is no evidence that the Pagel Agency or Busick breached any duty; the agent acted in good faith and followed Plaintiffs' instructions. The Court grants partial summary judgment as to Plaintiffs' negligence theory as it relates to any agent action or inaction in relation to the umbrella policies.

Plaintiffs also assert that the Applekamp Agency (in Michigan), and specifically agent Melissa Cavill, breached a duty by not offering or advising Plaintiffs as to UIM coverage when Mrs. Ray purchased the automobile policies. Citing *Harts*, State Farm asserts that Michigan agents only have a duty to "present the product of his principal and take such orders as can be secured from those who want to purchased the coverage offered," 597 N.W.2d at 50, and therefore here, Cavill did not have a duty to offer Plaintiffs UIM coverage or advise them that such coverage was available through other insurers. Instead, State Farm asserts Cavill met her duty by providing policies that contained the coverage and limits that Mrs. Ray selected in her applications. State Farm contests that a prior insurance card was given to the agent.

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds there is a significant fact issue that allows Plaintiffs' negligence claim to survive summary judgment as to the automobile policies.  By presenting an insurance card with the specific coverage that Plaintiffs wanted to the Michigan agent, which included UIM coverage, arguably Mrs. Ray was requesting UIM coverage or, through her actions, instructing the agent as to what insurance coverage she wanted, which would have included UIM coverage.  Under both Minnesota and Michigan law, that agent then would have a duty to procure that coverage.  Here, the Michigan agent did not do so and did not tell Mrs. Ray that the Applekamp Agency was not giving her that coverage.

"[W]here certain factual circumstances give rise to a duty, and there are disputed facts, a jury must determine whether those factual circumstances exist."  *Braun v. York Props., Inc.*, 583 N.W.2d 503, 505 (Mich. Ct. App. 1998).  "[T]he jury decides the question of duty only in the sense that it determines whether the proofs establish the elements of a relationship which the court has already concluded give rise to a duty as a matter of law."  *Id*. (quotations omitted).  Here, a jury must determine whether Mrs. Ray actually requested UIM coverage through providing her prior insurance card; if the answer is yes, then the duty to procure that coverage would apply.

The Court also finds that there are fact issues underlying a determination as to whether special circumstances existed between Mrs. Ray and her agents; if so, the agents would have a duty to advise Mrs. Ray of her lack in UIM coverage.  Plaintiffs have been State Farm insured for over 15 years.  Mrs. Ray claims she assumed that she continued with UIM coverage up through the date of her accident and maintains that such an

15

assumption was reasonable. Plaintiffs assert that none of the State Farm representatives with whom Mrs. Ray spoke ever told her she did not have UIM coverage. And Mrs. Ray testified in her deposition that she thought the State Farm agents had what they needed to have in order to transfer the coverage (including the UIM coverage) from state to state. Further, there is evidence indicating that the Applekamp Agency knew that Plaintiffs were going to be moving back to Minnesota; therefore, they could have known or found out that there would be a gap in UIM coverage once Plaintiffs moved and had not yet "renewed, delivered or issued for delivery or executed" their policies in Minnesota.

These facts create an issue as to whether Mrs. Ray relied on Cavill (the Michigan State Farm agent) to provide her with the appropriate coverage. And believing the facts as presented by Plaintiffs as true, a reasonable juror could find that Mrs. Ray was relying upon Cavill to provide appropriate coverage and that, at a minimum, the State Farm agents should have been aware that Plaintiffs were prone to moving from state to state and that Plaintiffs had UIM coverage in the past and may want to continue that coverage. State Farm promotes itself as a national insurance provider, and, in doing so, it implies to its customers that it has some continuity or, at a minimum, communication among agents across state lines. If Mrs. Ray did in fact rely on her agent to provide her the appropriate coverage, and the agent knew of that reliance, then the very least that the Michigan agent could have done would have been to tell Mrs. Ray that they would not be furnishing the UIM coverage.

In addition, Plaintiffs have also presented facts indicating a special relationship based on an ambiguous request that required clarification by Mrs. Ray's Michigan agent.

16

Again, the fact as to whether Mrs. Ray requested UIM coverage through providing her old insurance card is at issue. If this fact is found to be true, then it, combined with the circumstances that Michigan law did not require UIM coverage, the Michigan agent never questioned Mrs. Ray as to her prior UIM coverage listed on her card, and the Michigan agent never informed Mrs. Ray that State Farm did not provide UIM coverage in Michigan, indicate that Mrs. Ray's request could have been ambiguous. If this is found to be true, then a special relationship would have been present, thereby requiring a heightened duty by the Michigan agent.

At this stage, genuine issues of material fact exist underlying the Michigan agent's duty, whether it be a duty to procure the insurance requested or whether it be a heightened duty to advise because of certain special circumstances. Therefore, the Court denies summary judgment on the issue of agent negligence relating to the procurement of Plaintiffs' Michigan automobile policies.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Defendant's Motion for Summary Judgment (Doc. No. 10) is **GRANTED IN PART AND DENIED IN PART**.

2. Plaintiffs' Cross Motion for Summary Judgment (Doc. No. 13) is **WITHDRAWN**.

Dated: January 19, 2007         s/Donovan W. Frank
                                DONOVAN W. FRANK
                                Judge of United States District Court